UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
OCALA DIVISION

CHRISTIAN COALITION OF FLORIDA,
INC.,

          Plaintiff,

-vs-                                        Case No.  5:09-cv-144-Oc-10GRJ

UNITED STATES OF AMERICA,

          Defendant.
_____

## O R D E R

The Plaintiff, Christian Coalition of Florida ("CC-FL"), has filed a Complaint seeking a refund of federal corporate income taxes paid to the United States of America for the tax years 1991 and 1994-2000 (Doc. 1).  The United States has filed a motion to dismiss the entire case on the basis that it has refunded in full all taxes paid for these years, and therefore the Court is without subject matter jurisdiction because this action is now moot (Doc. 9).  CC-FL has filed a response in opposition (Doc. 10), and both sides have filed reply briefs (Docs. 15, 25).  Upon due consideration and for the reasons stated below, the Court concludes that the United States's motion is due to be granted.

## Background Facts

The following facts are drawn from CC-FL's Complaint unless otherwise noted. CC-FL is a Florida non-profit corporation with its principal place of business in Ocala, Florida (Doc. 1, ¶¶ 14, 16).  CC-FL advocates and teaches concern for the sanctity of life,

traditional family values, an economic system which fosters individual self-reliance, and faith in God (Id., ¶ 2). CC-FL classifies itself as an "advocacy organization" and engages in a substantial amount of lobbying activities. CC-FL publishes and circulates a monthly newsletter to its members, and regularly publishes voter guides during national and state elections, as well as annual legislative scorecards (Id., ¶¶ 3, 17-24). CC-FL also conducts leadership schools to train and involve citizens in the political process, organizes volunteer chapters, and publishes the voting records of elected officials (Id., ¶ 27).

On July 19, 1993, CC-FL applied to the Internal Revenue Service ("IRS") for recognition of tax exempt status under 26 U.S.C. § 501(c)(4)[1] and Treas. Reg. § 1.501(a)-1.[2] The IRS issued a proposed adverse determination letter on July 25, 2000, concluding that CC-FL did not qualify for tax exempt status under § 501(c)(4) because it was not primarily engaged in activities that promote social welfare (Doc. 1, ¶ 30).

CC-FL appealed the proposed adverse determination letter on October 5, 2000 (Id., ¶ 31). The appeal was unsuccessful, and the IRS issued its final determination letter on

---

[1] Section 501(c)(4) provides tax exempt status for corporations who are "[c]ivic leagues or organizations not organized for profit but operated exclusively for the promotion of social welfare, or local associations of employees, the membership of which is limited to the employees of a designated person or persons in a particular municipality, and the net earnings of which are devoted exclusively to charitable, educational, or recreational purposes." The promotion of social welfare does not include direct or indirect participation in political campaigns on behalf of or in opposition to any candidate for public office. 26 C.F.R. § 1.501(c)(4)-1(a)(2)(ii). However, an exempt § 501(c)(4) organization may carry on lawful political activities and remain exempt so long as it is primarily engaged in activities that promote social welfare. Id.; Rev. Rul. 81-95, 1981-1 C.B. 332.

[2] 26 C.F.R. § 1.501(a)-1 sets forth the proof necessary to establish that an organization qualifies for tax exempt status under any of the subsections of 26 U.S.C. § 501(c).

July 31, 2008.[3]  The IRS concluded that CC-FL was engaged in activities that primarily constitute political intervention on behalf of or in opposition to candidates for public office, that CC-FL's organizational structure was virtually identical to that of a political party, and that CC-FL's legislative scorecards and voter guides constituted political intervention (Id., ¶¶ 34-37).

The IRS directed CC-FL to file corporate income tax returns for the 1991, 1994-2000, 2005, and 2006 tax years within thirty (30) days from the date of the final determination letter (Doc. 1, ¶ 38).  CC-FL complied with this directive, and filed its corporate income tax returns plus payments on August 27, 2008 (Id., ¶ 39).   The returns listed taxable income for each year between $103.00 and $317.00, and taxes due and owing between $16.00 and $48.00 (Id.).  On November 3, 2008, the IRS assessed the tax liabilities shown on the returns and made additional assessments of penalties and interest.

On September 25, 2008, CC-FL filed claims for refunds for each of these tax years. The CC-FL premised its claims for refunds on its assertion that it qualified as an exempt organization under § 501(c)(4), and, therefore, the taxes paid for these tax years were overpayments due to be refunded (Id., ¶¶ 40-41).

---

[3]Part of the reason for the nearly eight (8) year delay was that the parties agreed to stay the appeals process during the pendency of litigation in the United States District Court for the Eastern District of Virginia.  The litigation involved The Christian Coalition International, an affiliated, but separate and independent legal entity from CC-FL, which was also seeking tax exempt status under § 501(c)(4) (Doc. 1, ¶ 32).

On December 1, 2008, the IRS granted CC-FL's request for a refund for tax years 2005 and 2006, and refunded the entire amount of taxes paid, plus statutory interest ($45.45 for tax year 2005 and $23.23 for tax year 2006). The IRS also removed all assessed penalties and interest for those tax years (Doc. 1, ¶¶ 43-44). The IRS did not specify in its refund letters the basis for granting the refunds, however, the only ground CC-FL asserted in its refund claims was tax exempt status under § 501(c)(4) (Id.). The IRS did not immediately address CC-FL's remaining claims for the tax years 1991, and 1994-2000, and after six (6) months had elapsed from the date CC-FL filed its refund claims, CC-FL filed its Complaint in this Court seeking a refund for those tax years. See 26 U.S.C. §6532(a)(1).[4]

CC-FL filed its Complaint on April 3, 2009 seeking a cumulative refund of $261.00 for the tax years 1991 and 1994-2000. CC-FL also seeks a declaration that it qualifies as a tax exempt entity under § 501(c)(4) for each tax year in question, an order instructing the IRS to issue a favorable determination letter, an injunction prohibiting the IRS from revoking CC-FL's exempt status (provided its activities do not materially differ from the facts set forth in its application for exemption), and a declaration that certain provisions of the Internal Revenue Code are unconstitutional, both on their face and as applied to CC-FL (Doc. 1, ¶¶ 89, 94, 99, 104, 109, 114, 119, 124).

---

[4] 26 U.S.C. § 6532(a)(1) provides that a taxpayer must wait to commence a lawsuit for the recovery of taxes and penalties until after the expiration of six (6) months from the date the taxpayer filed a claim for refund with the IRS.

Shortly after CC-FL filed its Complaint, the IRS began sending refund checks to CC-FL for the tax years 1991 and 1994-2000. It appears that the last check was sent on August 11, 2009. See Second Declaration of Bill Stephens at ¶¶ 4-8 (Doc. 21). The IRS now claims that it holds no amounts claimed by CC-FL for the tax years in question. See Declaration of Thomas J. Miller at ¶ 6 (Doc. 9-1). CC-FL admits that it is in possession of these refund checks, but states that it has not accepted tender of them. See Declaration of Bill Stephens at ¶¶ 3-4 (Doc. 10-1).

**Standard of Review**

The United States seeks dismissal pursuant to Fed. R. Civ. P. 12(b)(1) based on an alleged lack of subject matter jurisdiction due to mootness. Such motions can be premised upon either a facial or factual challenge to the complaint. McElmurray v. Consol. Gov't of Augusta-Richmond County, 501 F.3d 1244, 1251 (11th Cir. 2007) (citing Williamson v. Tucker, 645 F.2d 404, 412 (5th Cir. 1981)).[5] A "facial attack" on the complaint "require[s] the court merely to look and see if [the] plaintiff has sufficiently alleged a basis of subject matter jurisdiction, and the allegations in his complaint are taken as true for the purposes of the motion." Lawrence v. Dunbar, 919 F.2d 1525, 1529 (11th Cir. 1990) (quoting Menchaca v. Chrysler Credit Corp., 613 F.2d 507, 511 (5th Cir. 1980)). On the other hand, factual attacks challenge "the existence of subject matter jurisdiction in fact, irrespective

---

[5]The Eleventh Circuit has adopted as binding precedent all decisions of the former Fifth Circuit announced prior to October 1, 1981. Bonner v. Prichard, 661 F.2d 1206, 1209 (11th Cir. 1981) (*en banc*).

of the pleadings, and matters outside the pleadings, such as testimony and affidavits are considered." Id. (quoting Menchaca, 613 F.2d at 511). In a factual attack, the presumption of truthfulness afforded a plaintiff under Fed. R. Civ. P. 12(b)(6) does not attach and, where the elements of the underlying cause of action are not implicated, the court is free to weigh the evidence. Scarfo v. Ginsberg, 175 F.3d 957, 960 (11th Cir. 1999); Goodman v. Sipos, 259 F.3d 1327, 1331 n. 6 (11th Cir. 2001).

The United States clearly is making a factual attack on jurisdiction as it relies on extrinsic evidence and affidavits and goes beyond the four corners of CC-FL's Complaint. See Doc. 9 at pp. 4-5. The factual attacks, however, do not implicate the underlying elements of CC-FL's claims – that is, the Court will not have to address whether CC-FL is actually entitled to a refund or to permanent tax exempt status in order to assess jurisdiction. Therefore, the Court "is free to weigh the evidence and satisfy itself as to the existence of its power to hear the case." See Scarfo, 175 F.3d at 960.

## Discussion

The United States, as a sovereign entity, is immune from suit unless it consents to be sued. United States v. Dalm, 494 U.S. 596, 608 (1990). A waiver of sovereign immunity "must be expressly and unequivocally found in the statutory text and cannot be implied." Lane v. Pena, 518 U.S. 187, 192 (1996). "The terms of [the United States'] consent to be sued in any court define that court's jurisdiction to entertain the suit." United States v. Sherwood, 312 U.S. 584, 586-87 (1941). The United States has waived its

6

sovereign immunity to allow taxpayers to file suit for tax refunds, see 28 U.S.C. §1346(a)(1), but the taxpayer must first pay the assessment in full and file an administrative claim for a refund which the IRS has rejected or not acted upon in six months.  See 26 U.S.C. § 7422.

There is no dispute that CC-FL has met these prerequisites, however the United States contends that events following the commencement of this litigation – namely its issuance of refund checks to CC-FL for all tax years in question – have rendered all of CC-FL's claims moot, and removed this Court's subject matter jurisdiction.  Whether or not CC-FL continues to have a viable tax refund claim is crucial, particularly in this case where CC-FL seeks substantial declaratory and injunctive relief.  Both the Declaratory Judgment Act, 28 U.S.C. § 2201 and the Anti-Injunction Act,  26 U.S.C. § 7421, explicitly prohibit federal courts from entertaining declaratory or injunctive proceedings dealing with the assessment or collection of federal taxes.[6]  Thus, without a viable tax refund claim, CC-FL cannot go forward in this Court as the United States has not waived its sovereign immunity with respect to declaratory and injunctive relief.[7]

---

[6] The Declaratory Judgment Act authorizes "any court of the United States" to issue a declaratory judgment, with the exception of most "actions with respect to Federal taxes." 28 U.S.C. § 2201.  Similarly, the Anti-Injunction Act commands that "no suit for the purpose of restraining the assessment or collection of any tax shall be maintained in any court." 26 U.S.C. § 7421(a).  The relief CC-FL seeks: an order directing the IRS to issue a ruling that CC-FL is tax exempt, and an injunction enjoining the IRS from withdrawing such a ruling, would clearly restrain the assessment or collection of taxes. See Bob Jones University v. Simon, 416 U.S. 725, 731-32, 738-39 (1974).

[7] The United States has consented to suits seeking declaratory relief only where an
(continued...)

Because the United States has now refunded in full all taxes and interest to CC-FL and waived all penalties, the United States claims there is nothing left to litigate. See Handeland v. Commissioner, 519 F.2d 327, 330 (9th Cir. 1975); Lamb v. Commissioner, 390 F.2d 157, 158 (2d Cir. 1968); Turgeon v. United States, No. 4-81-Civ. 55, 1982 WL 1641 (D. Minn. May 28, 1982). See also Ethredge v. Hail, 996 F.2d 1173, 1175 (11th Cir. 1993) ("A case is moot when it no longer presents a live controversy with respect to which the court can give meaningful relief."). In response, CC-FL argues that its claims remain viable for three reasons: (1) CC-FL has not accepted the IRS's tender of the refunds for the tax years 1991 and 1994-2000, therefore the IRS remains free to withdraw the tenders at any time; (2) the IRS's final determination letter holding that CC-FL is not exempt under § 501(c)(4) remains in full force and effect, and has resulted in substantial collateral consequences for CC-FL; and (3) CC-FL's claims are not moot because the question of its tax exempt status remains "capable of repetition yet evading review." See Sierra Club v. E.P.A., 315 F.3d 1295, 1302 n. 11 (11th Cir. 2002). The Court will address each of these arguments in turn.

**A.    The Tender of the Refund Checks**

The Court is unpersuaded by CC-FL's argument that its tax refund claims remain viable simply because it has not accepted the IRS's tender of refund checks for the tax

---

[7](...continued)
application for tax exempt status under § 501(c)(3) has been denied. See 26 U.S.C. § 7428. There is no similar remedy for organizations denied tax exempt status under any other subsection of § 501(c).

8

years in question. As the United States explains in its reply brief (Doc. 15, pp. 2-5), the IRS was required by statute to make the refund payments to CC-FL and cannot rescind them. The IRS determined that CC-FL made all of its income tax payments after the applicable three year statute of limitations had expired.[8] As a result, the IRS was required to remit these payments to CC-FL as overpayments under 26 U.S.C. §§ 6401(a), 6402(a), and 6501(a).[9] See also Alexander v. United States, 44 F.3d 328, 331 (5th Cir. 1995) ("Under the Code, payments made after the limitations period are defined as 'overpayments' and, as such, must be refunded.").

It is undisputed that CC-FL has possession of all refund checks for the tax years in question. It is also now clear that the IRS cannot at some later point in time change its mind and attempt to recover those checks. Thus, there is nothing left to litigate with respect to CC-FL's claims for a refund of their taxes paid, and CC-FL cannot create a valid tax refund claim simply by refusing to cash their refund checks.[10]

---

[8] The IRS determined that the three year statute of limitations ran from the date CC-FL filed its original Forms 990 (Return of Organization Exempt from Income Tax) with respect to each of the tax years at issue. See 26 U.S.C. § 6501(a), (g)(2). The last Form 990 for the years in question in this case was filed by CC-FL on August 28, 2001. See Declaration of Thomas J. Miller (Doc. 9-2). Thus, the statute of limitations expired on August 28, 2004, and all of the payments CC-FL made in 2008 (after the IRS finally determined that CC-FL was not exempt) were therefore due to be refunded as overpayments.

[9] 26 U.S.C. § 6402(a) directs the IRS to credit the amount of any overpayments, including any interest allowed thereon, against any tax liabilities, and then to refund the balance to the taxpayer. The IRS has presented unrefuted evidence that it did so for each of the tax years in question.

[10] The cases CC-FL cites for its argument are also unpersuasive. In each case, the United
(continued...)

**B.     Collateral Consequences**

CC-FL next contends that the IRS's final determination letter that CC-FL is not tax exempt has resulted in several "rather substantial" collateral consequences. For example, CC-FL claims that potential donors will be less likely to contribute to CC-FL if it is not a tax exempt organization. In addition, CC-FL does not qualify for an exemption from state taxes in Florida unless it possesses a favorable determination letter from the IRS. According to CC-FL, since the IRS issued its final determination letter, the Florida Department of Revenue has assessed over $ 2,400 in penalties against it for late-filing state tax returns. See Declaration of Bill Stephens, Exs. 1-8 (Doc. 10-2).[11]  CC-FL contends that these collateral consequences overcome the fact that the IRS has tendered payment in full, and therefore its claims are not moot. See Church of Scientology of Hawaii v. United States, 485 F.2d 313, 318 (9th Cir. 1973) ("In addition, the failure to resolve the legal issue [of tax exempt status] results in adverse collateral consequences which would be resolved by a determination of the underlying issue.").

---

[10](...continued)
States was not required by statute to refund any payments, did not tender any refunds until well into the litigation process (after discovery was completed and summary judgment motions were filed), and merely offered refunds as either an offer of compromise, or by order of the court. See Hotel Conquistador v. United States, 597 F.2d 1348 (Ct. Cl. 1979); First Federal Sav. & Loan Ass'n of St. Joseph v. United States, 288 F. Supp. 477 (D. Mo. 1967).

[11]Pursuant to Fla. Admin. Code. R. 12C-1.022(e)(1), tax-exempt organizations are not required to file state income tax returns. It appears that once CC-FL received its final determination from the IRS, it had to file state income tax returns for the years in question, and the Florida Department of Revenue assessed late fees.

The Court is not persuaded by CC-FL's argument. See Alexander v. "Americans United" Inc., 416 U.S. 752, 762 (1974); Bob Jones University v. Simon, 416 U.S. 725, 745-46 (1974) (both noting that allowing injunctive relief against the IRS based solely on a finding of irreparable harm to a taxpayer would render the Anti-Injunction Act meaningless).[12]

## C.    Capable of Repetition Yet Evading Review

CC-FL's last argument is that its case is not moot because the question of whether it is tax exempt under § 501(c)(4) will recur in subsequent tax years. See Church of Scientology, 485 F.2d at 318 ("the possibility of a continuing recurrence of the problem [is] sufficient to entitle the taxpayer to have the underlying legal issue determined."). "[T]he capable-of-repetition doctrine applies only in exceptional situations, and generally only where the named plaintiff can make a reasonable showing that he will again be subjected to the alleged illegality." City of Los Angeles v. Lyons, 461 U.S. 95, 109 (1983), citing DeFunis v. Odegaard, 416 U.S. 312, 319 (1974).

The Supreme Court has expressly refrained from determining whether a court can issue an injunction or award declaratory relief against the IRS in a refund action (either with or without a complete refund by the IRS during the litigation). See Alexander, 416 U.S. at 762 n. 13; Bob Jones, 416 U.S. at 748 n. 22. It also does not appear that the Eleventh

---

[12]The Court is also unpersuaded by CC-FL's contention that it will suffer collateral consequences in the form of recurring federal tax liability. Every taxpayer suffers such consequences. Thus under CC-FL's argument, every taxpayer would then have the ability to circumvent the Anti-Injunction and Declaratory Judgment Acts and sue the IRS for equitable relief.

Circuit has addressed this question to date. Instead, CC-FL relies heavily on the Ninth Circuit's Church of Scientology decision. The taxpayer in Church of Scientology was a nonprofit religious corporation which was denied tax exempt status under §501(c)(3). After the Church paid its assessed taxes, it filed suit seeking a refund of the sums paid. Following discovery proceedings and a motion for summary judgment filed by the Church, the IRS proposed a settlement in the form of a full refund, and ultimately tendered a refund check to the Church. 485 F.2d at 314. The Church refused the tender, and the IRS filed a motion to dismiss on the basis that the refund claims were now moot. Id. Both the district court and the Ninth Circuit denied the motion, and found that a live controversy still existed because the question of the Church's tax exempt status would recur each year. Id. at 317-18.

Church of Scientology is distinguishable from the facts of this case. The Ninth Circuit was persuaded by the fact that there was a very high likelihood that the Church's tax exempt status would come into question in future years. In particular, evidence was presented that the IRS had already begun proceedings to collect taxes from the Church for future tax years, including subpoenas and levies on the Church's accounts. 485 F.2d at 316-17. No such facts exist in this case. To the contrary, the IRS refunded all sums paid for the tax years in question early in the litigation process, before any discovery or summary judgment motions had been filed, and without any court order. Moreover, it appears that the IRS's position with respect to CC-FL is not set in stone – before this case was filed the IRS refunded all taxes paid for the 2005 and 2006 tax years. CC-FL agrees

that the statute of limitations had not run for 2005 and 2006 at the time of the refunds, and the only basis asserted by CC-FL for the refunds was its tax exempt status.  Thus, unlike in Church of Scientology, the Court cannot say that there is a strong suggestion that the IRS will demand income taxes from CC-FL in future years.

The Court also recognizes that CC-FL has other avenues of relief that it can pursue that do not run afoul of the United States's sovereign immunity.  Not only can CC-FL pursue refund claims in the future should the IRS assess taxes and CC-FL pay them, but CC-FL also could petition the Tax Court of the United States, prior to paying any taxes, and in the event of an adverse determination by the Tax Court, petition the Eleventh Circuit to review the decision. See Bob Jones, 416 U.S. at 746-47; 26 U.S.C. §§ 6212, 6213. CC-FL also could simply refuse to pay any assessed taxes and put the IRS's position to the test. Even though these avenues take substantial time, they are still available avenues for relief which do not implicate the sovereign immunity provisions of the Anti-Injunction and Declaratory Judgment Acts. See South Carolina v. Regan, 465 U.S. 367 (1984) (Congress intended the Anti-Injunction Act to bar a suit only in situations where Congress has provided an aggrieved party with an alternative legal avenue by which to contest the legality of a particular tax).

Moreover, allowing CC-FL's claims to go forward would settle nothing more than its income tax status for the particular years under consideration in this case.  "Income taxes are levied on an annual basis.  Each year is the origin of a new liability and of a separate cause of action." Commissioner v. Sunnen, 333 U.S. 591, 598 (1948). Collateral estoppel

only applies to subsequent tax years where the identical facts and legal theories are at issue. Id. at 599-600. Thus, a declaration that CC-FL was tax exempt for the 1991 and 1994-2000 tax years would not necessarily mean that CC-FL would be tax exempt for the foreseeable future. As this very case demonstrates, finding an entity tax exempt under §501(c)(4) is highly fact specific, and a determination by this Court for the tax years at issue would be nothing more than an advisory opinion for future years.

Lastly, the Court is aware of, and agrees with, the concerns raised by the Supreme Court in Bob Jones – namely that a taxpayer should not be forced "to bring a series of backward-looking refund suits in order to establish repeatedly the legality of its claim to tax-exempt status." 416 U.S. at 748 n. 22. However, this is not the proper case to create new law based on these concerns. In this case, the IRS has refunded all taxes to CC-FL very early in the litigation process. There is nothing left to litigate with respect to the refund claims. Thus, the Court would be faced with going forward solely on claims for declaratory and injunctive relief – in direct contravention to the mandates of the Anti-Injunction and Declaratory Judgment Acts. The Court is not willing to go down this path – particularly in light of the fact that it is not entirely certain that the IRS will continue to assess and/or collect taxes from CC-FL in future years, and given the existence of other available avenues for relief. As the Supreme Court noted in Bob Jones:

> We do not say that these avenues of review are the best that can be devised. They present serious problems of delay, during which the flow of donations to an organization will be impaired and in some cases perhaps even terminated. But, as the Service notes, some delay may be an inevitable consequence of

> the fact that disputes between the Service and a party challenging the Service's actions are not susceptible of instant resolution through litigation. And although the congressional restriction to post-enforcement review may place an organization claiming tax-exempt status in a precarious financial position, the problems presented do not rise to the level of constitutional infirmities, in light of the powerful governmental interests in protecting the administration of the tax system from premature judicial interference.

416 U.S. at 747.

## Conclusion

Accordingly, upon due consideration, the Court finds that CC-FL's claims are now moot, and that the Court does not have subject matter jurisdiction to entertain its claims for injunctive and declaratory relief. The United States's Motion to Dismiss Complaint (Doc. 9) is therefore GRANTED. The Clerk is directed to enter judgment dismissing this case with prejudice, terminate all pending motions, and close the file.

IT IS SO ORDERED.

DONE and ORDERED at Ocala, Florida this 3rd day of August, 2010.

*[signature]*

UNITED STATES DISTRICT JUDGE

Copies to: Counsel of Record